IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OAKLEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIGHT IN THE BOX LIMITED, <br><br> Defendant. | Case No. 19-cv-03602 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Oakley, Inc. ("Oakley" or "Plaintiff") hereby brings the present action against Defendant Light In The Box Limited ("Defendant" or "LITB") and alleges as follows:

**I. INTRODUCTION**

1. This action has been filed by Oakley to address Defendant's selling and offering for sale of gloves or other products featuring counterfeits of the Oakley trademarks (the "Counterfeit Products") through Defendant's websites at lightinthebox.com and miniinthebox.com. Oakley seeks to address Defendant's counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing low-quality Counterfeit Products over the Internet from China. Oakley has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions and seek injunctive and monetary relief.

2. Defendant is a repeat trademark counterfeiter. On July 1, 2014, Oakley filed the lawsuit 1:14-cv-04995, *Oakley, Inc. v. LightInTheBox Holding Co., Ltd., et al.,* in the United States District Court for the Northern District of Illinois ("Lawsuit I") against Defendant for offering for sale and selling products bearing counterfeit Oakley trademarks through its website

at lightinthebox.com. Defendant continued to offer for sale and sell products bearing counterfeit Oakley trademarks on multiple occasions despite receiving notices, and even while Lawsuit I was pending.

3. On March 26, 2015, Oakley and Defendant entered into a valid and binding settlement agreement ("Agreement I"), resolving Lawsuit I. Among other terms, Defendant agreed to immediately and permanently cease and desist from any further infringement or unauthorized use of the Oakley trademarks.

4. In April 2016, Oakley again determined that Defendant was selling products bearing counterfeit versions of the Oakley trademarks through its website at lightinthebox.com and in violation of Agreement I. In addition, Luxottica Group S.p.A., Oakley's parent company, determined that Defendant was selling products bearing counterfeit versions of the Ray-Ban trademarks through its website at lightinthebox.com.

5. On May 18, 2016, Oakley and Luxottica Group S.p.A. filed the lawsuit 1:16-cv-05314, *Luxottica Group S.p.A., et al. v. LightInTheBox Holding Co., Ltd., et al.*, in the United States District Court for the Northern District of Illinois ("Lawsuit II") against Defendant for trademark infringement and counterfeiting, and breach of contract of Agreement I. On October 19, 2016 a preliminary injunction was entered against LITB enjoining further infringement or unauthorized use of the Oakley and Ray-Ban trademarks, noting that there are "serious questions about Defendant's ability to police its own website to ensure that it is not selling counterfeit goods." *Luxottica Grp. S.p.A. v. Light in the Box Ltd*., No. 16-cv-05314, 2016 U.S. Dist. LEXIS 144660, at *21 (N.D. Ill. Oct. 19, 2016).

6. On March 2, 2018, Oakley, Luxottica Group S.p.A., and Defendant entered into a valid and binding settlement agreement ("Agreement II"), resolving Lawsuit II. Among other

2

terms, Oakley, Luxottica Group S.p.A., and Defendant agreed to entry of a Stipulated Final Order for Consent Judgment, Permanent Injunction, and Dismissal. A true and correct copy of the Stipulated Final Order for Consent Judgment, Permanent Injunction, and Dismissal is attached hereto as **Exhibit 1**.

7. In April 2019, Oakley once again determined that Defendant was selling products bearing counterfeit versions of the Oakley trademarks through its websites at lightinthebox.com and miniinthebox.com.

## II. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in Illinois and causes harm to Oakley's business within this Judicial District. Defendant has targeted sales from Illinois residents by operating fully interactive and commercial websites that offer to sell and have sold Counterfeit Products to residents of Illinois, including the websites at lightinthebox.com and miniinthebox.com. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Oakley substantial injury in the State of Illinois.

### III. THE PARTIES

**Plaintiff Oakley**

10. Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

11. Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A.

12. Oakley is an internationally recognized manufacturer, distributor and retailer of eyewear, apparel, footwear, outerwear, jackets, gloves, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products"). Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design. Among the purchasing public, genuine Oakley Products are instantly recognizable as such. In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, apparel, footwear, outerwear, jackets, gloves and accessories in the world.

13. Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official Oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

14. Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products. As a result of its long-standing use, Oakley owns common law trademark rights in Oakley Trademarks. Oakley has also registered its trademarks with the United States

Patent and Trademark Office. Oakley Products typically include at least one of Oakley's registered trademarks. Often several Oakley marks are displayed on a single Oakley Product. Oakley has registered its trademarks with the United States Patent and Trademark Office. Oakley uses its trademarks in connection with the marketing of its Oakley Products, including, but not limited to, the following marks which are collectively referred to as the "OAKLEY Trademarks."

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 5,109,790 | *[Oakley ellipse logo]* | For: Gloves in class 25. |
| 2,698,855 | FACTORY PILOT | For: Clothing, headwear and footwear, namely t-shirts, sweatshirts, blouses, sport shirts, jerseys, skiwear, shorts, pants, sweat pants, coats, vests, jackets, swimwear, hats, visors, caps, gloves, clothing belts, socks, sandals and shoes in class 025. |
| 2,740,800 | FACTORY PILOT | For: Sporting goods, namely mountain bike gloves in class 028. |
| 3,331,124 | *[Oakley ellipse logo]* | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, |

|           |        |                                                                                                                                                                                                                                                      |
|-----------|--------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|           |        | athletic footwear, all purpose sports footwear, thongs and boots in class 25.                                                                                                                                                                        |
| 1,522,692 | OAKLEY | For: Clothing, namely, shirts and hats in class 25.                                                                                                                                                                                                  |
| 2,293,046 | OAKLEY | For: Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks in class 25.     |

15.     The above registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The OAKLEY Trademarks have been used exclusively and continuously by Oakley for many years and have never been abandoned. Attached hereto as **Exhibit 2** are true and correct copies of the United States Registration Certificates for the OAKLEY Trademarks included in the above table. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the OAKLEY Trademarks are conclusive evidence of the validity of Oakley's OAKLEY Trademarks and of the registrations of the OAKLEY Trademarks, of Oakley's ownership of the OAKLEY Trademarks, and of Oakley's exclusive right to use the OAKLEY Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065.

16.     The OAKLEY Trademarks are exclusive to Oakley and are displayed extensively on Oakley Products and in Oakley's marketing and promotional materials. Typically, at least one of the OAKLEY Trademarks are included on Oakley Products. Oakley Products have long been among the most popular eyewear in the world and have been extensively promoted and advertised at great expense. In fact, Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring the OAKLEY Trademarks. Oakley Products have also been the subject of extensive unsolicited publicity resulting from their high-quality,

innovative designs and renown as desired luxury items. Because of these and other factors, the Oakley name and the OAKLEY Trademarks have become famous throughout the United States.

17. The OAKLEY Trademarks are distinctive when applied to the Oakley Products, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards. Whether Oakley manufactures the products itself or licenses others to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OAKLEY Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the OAKLEY Trademarks is of incalculable and inestimable value to Oakley.

18. Since at least as early as 1995, Oakley has operated a website where it promotes and sells genuine Oakley Products at Oakley.com. Sales of Oakley Products via the Oakley.com website represent a significant portion of Oakley's business. The Oakley.com website features proprietary content, images and designs exclusive to Oakley.

19. Oakley's innovative marketing and product designs have enabled Oakley to achieve widespread recognition and fame and have made the OAKLEY Trademarks some of the most well-known marks in the eyewear and apparel industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Oakley brand have made the OAKLEY Trademarks valuable assets of Oakley.

20. Oakley has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OAKLEY Trademarks. As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Oakley is a multi-

million dollar operation, and Oakley Products have become among the most popular of their kind in the world.

**Defendant Light In The Box Limited**

21. Upon information and belief, Defendant Light In The Box Limited is a corporation incorporated in Hong Kong that primarily engages in product sourcing, marketing and the operation of Defendant's websites at lightinthebox.com and miniinthebox.com and the sale of products targeted towards consumers outside of China, including the United States.

22. Defendant conducts business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of its fully interactive commercial websites at lightinthebox.com and miniinthebox.com. Defendant targets the United States, including Illinois residents, and has offered to sell, and has sold Counterfeit Products to consumers within the State of Illinois though the lightinthebox.com and miniinthebox.com websites.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

23. Defendant operates the fully interactive commercial websites located at lightinthebox.com and miniinthebox.com.

24. Defendant is engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products on its websites at lightinthebox.com and miniinthebox.com bearing logos and source-identifying indicia and design elements that are studied imitations and counterfeits of the OAKLEY Trademarks (previously defined as the "Counterfeit Products").

25. Oakley's investigator visited the Defendant's websites at lightinthebox.com and miniinthebox.com and purchased Counterfeit Products.

Case: 1:19-cv-03602 Document #: 1 Filed: 05/30/19 Page 9 of 15 PageID #:9

26. The purchased Counterfeit Products were shipped to Oakley's investigator.

27. The purchased Counterfeit Products were inspected, and it was determined that each product was counterfeit and infringed the OAKLEY Trademarks.

28. A comparison of the OAKLEY Products to Defendant's Counterfeit Products exemplifies Defendant's counterfeiting and infringement of the OAKLEY Trademarks.



| OAKLEY Trademarks | Defendant's Counterfeit Products |
|---|---|
| (Reg. No. 5,109,790) | |
| OAKLEY (Reg. Nos. 1,522,692 and 2,293,046) FACTORY PILOT (Reg. Nos. 2,698,855 and 2,740,800) | |

9

| <br>(Reg. No. 3,331,124) |  |
|---|---|

29. Upon information and belief, Defendant is well aware of the extraordinary fame and strength of the OAKLEY Trademarks and the goodwill associated therewith.

30. Defendant, without any authorization, license, or other permission from Oakley, has used the OAKLEY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

31. Defendant's use of counterfeits of the OAKLEY Trademarks in the advertisement, distribution, offering for sale, and sale of Counterfeit Products was willful.

32. Defendant's willful use of counterfeits of the OAKLEY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Oakley.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33. Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the federally registered OAKLEY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The OAKLEY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Oakley Products sold or marketed under the OAKLEY Trademarks.

35. Defendant has sold, offered to sell, marketed, distributed and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeits of the OAKLEY Trademarks without Oakley's permission.

36. Oakley is the exclusive owner of the OAKLEY Trademarks. Oakley's United States Registrations for the OAKLEY Trademarks (Exhibit 2) are in full force and effect. Upon information and belief, Defendant has knowledge of Oakley's rights in the OAKLEY Trademarks and is willfully infringing and intentionally using counterfeits of the OAKLEY Trademarks. Defendant's willful, intentional and unauthorized use of the OAKLEY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

37. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Oakley has no adequate remedy at law, and if Defendant's actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its well-known OAKLEY Trademarks.

39. The injuries and damages sustained by Oakley have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41. Defendant's promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Oakley or the origin, sponsorship, or approval of Defendant's Counterfeit Products by Oakley.

42. By using the OAKLEY Trademarks on the Counterfeit Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

43. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Oakley has no adequate remedy at law and, if Defendant's actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of the Oakley brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

45. Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46. Defendant has engaged in acts violating Illinois law including, but not limited to, passing off its Counterfeit Products as those of Oakley, causing a likelihood of confusion and/or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Oakley Products, representing that its products have Oakley's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

47. The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

48. Oakley has no adequate remedy at law, and Defendant's conduct has caused Oakley to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Oakley will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Oakley prays for judgment against Defendant as follows:

1) That Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with Defendant be temporarily, preliminarily and permanently enjoined and restrained from:

    a. using the OAKLEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Oakley Product or is not authorized by Oakley to be sold in connection with the OAKLEY Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Oakley Product or any other product produced by Oakley, that is not Oakley's or not

produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under the OAKLEY Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendant's products are those sold under the authorization, control or supervision of Oakley, or are sponsored by, approved by, or otherwise connected with Oakley;

d. further infringing the OAKLEY Trademarks and damaging Oakley's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear any of Oakley's trademarks, including the OAKLEY Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Oakley a written report under oath setting forth in detail the manner in which Defendant has complied with paragraph 1, a through e, above;

3) That Defendant account for and pay to Oakley all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the OAKLEY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Oakley be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) of $2,000,000 for each and every use of the OAKLEY Trademarks;

14

5) That Oakley be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Oakley hereby demands a trial by jury as to all issues so triable.

Dated this 30th day of May 2019.	Respectfully submitted,

/s/ Justin R. Gaudio_____
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff Oakley, Inc.*